IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| VINEETA PRASAD, | ) | |
|   Apellant, | ) | |
| | ) | |
|  v. | ) | No. 13 C 6771 |
| | ) | |
| GREGG SZILAGYI, | ) | Appeal from: |
| | ) | U.S.B.C. No. 09-24416 |
|   Appellee. | ) | |
| | ) | |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

Debtor Vineeta Prasad ("Prasad") appeals from an order of the United States Bankruptcy Court for the Northern District of Illinois ("Bankruptcy Court") approving a settlement between Gregg Szilagyi, Trustee ("Trustee") of the chapter 7 estate ("Estate") of Prasad, and Acxiom Corporation ("Acxiom"). For the reasons set forth below, the order (Bankr. Dkt. No. 96[1]) of the Bankruptcy Court is affirmed. Civil Case Terminated.

BACKGROUND

On July 3, 2009, Prasad filed a voluntary petition for Chapter 7 bankruptcy, and the Bankruptcy Court appointed the Trustee as administrator. After reviewing Prasad's bankruptcy filings—which included no mention of any pending legal claims—and examining Prasad personally at a meeting with her creditors, the Trustee on August 14, 2009 reported that Prasad had no assets to administer. (Bankr. Dkt. No. 12.) In October 2009, the Bankruptcy Court issued an

---

[1] In this opinion, this court will refer to documents in the docket of Prasad's general bankruptcy proceeding (No. 13-bk-24416) as follows: (Bankr. Dkt. No. \_\_.). This court will refer to documents in the docket of the adversary proceeding between Prasad and Acxiom (No. 10-cv-5943) as follows: (Adv. Dkt. No. \_\_.).

order closing the case and discharging Prasad's debts, which totaled $1,250,179.67. (Bankr. Dkt. No. 19.)

In October 2008, approximately one year before filing for bankruptcy, Prasad had filed a charge of discrimination with the Illinois Department of Human Rights ("IDHR") and cross-filed the same charge with the Equal Employment Opportunity Commission ("EEOC") alleging that her former employer, Acxiom, discriminated against her because of her race and her sex, subjected her to sexual harassment, and retaliated against her after she complained about the alleged treatment. (Adv. Dkt. No. 50, 1.)

On September 20, 2010, the EEOC issued Prasad a Notice of Right to Sue on her discrimination charges and Prasad filed a complaint in this district court, captioned *Vineeta Prasad* v. *Acxiom Corporation*, Case No. 10-cv-05943 (the "district court case"). The complaint alleged essentially the same conduct by Acxiom about which Prasad complained to the EEOC, but was eventually amended to include a claim for breach of contract under Illinois law. (Adv. Dkt. 18.)

On March 17, 2011, after learning that Prasad failed to disclose her legal claims in her bankruptcy petition, Acxiom moved for summary judgment on the basis that Prasad was judicially estopped from bringing the discrimination action. (Adv. Dkt. No. 24.) The same day, Prasad moved to reopen her bankruptcy case in the Bankruptcy Court. (Bankr. Dkt. No. 20.) On April 5, the Bankruptcy Court granted Prasad's motion to reopen the bankruptcy case, (Bankr. Dkt. No. 23), and on April 11, Prasad amended her Statement of Financial Affairs and other schedules to include the charges filed with the EEOC (Bankr. Dkt. Nos. 24, 25.). Curiously, Prasad amended her schedules to list the EEOC charge as "Dismissed," but failed to mention the district court case she had filed as a result of the EEOC's decision. (Bankr. Dkt. No. 24, ¶ 4.) One day later, on April 12, the Bankruptcy Court closed Prasad's bankruptcy case again. (Bankr. Dkt. No. 27.)

On April 25, 2011, after learning from attorneys for Acxiom that the district court case was "pending before the [district] court and had the potential to yield assets to administer for [Prasad's] creditors," the Trustee filed a motion to reopen the bankruptcy case for a second time. (Bankr. Dkt. No. 28.) The Bankruptcy Court granted the Trustee's motion to reopen Prasad's bankruptcy case and Prasad subsequently filed two Amended Schedules B: one on May 13 and another on July 19. Each Amended Schedule B reported the value of the district court case as $80,000. (Bankr. Dkt. Nos. 32, ¶ 21; 47, ¶ 21.)

Shortly thereafter, the Trustee reached an agreement with Acxiom to settle the district court case and filed a motion asking the Bankruptcy Court to approve the settlement. (Bankr. Dkt. No. 49.) Prasad objected to the settlement, arguing that she was entitled to a portion of the proceeds in the district court case under the personal injury exemption. (Bankr. Dkt No. 55.) After further negotiations, all parties—including Prasad—agreed to a revised settlement agreement. Pursuant to the revised agreement, Acxiom agreed to pay $25,000 to settle the district court case, $12,000 of which the Trustee agreed to pay directly to Prasad and her attorney in the district court case. On October 3, 2011, the Bankruptcy Court approved the settlement. (Bankr. Dkt. No. 61.) Following the Bankruptcy Court's approval, however, Prasad refused to sign the revised settlement agreement. As a result, the Bankruptcy Court granted the Trustee's motion to vacate the order approving the settlement (Bankr. Dkt. No. 64) and Prasad continued to litigate her claims against Acxiom in the district court case.

Following the collapse of the settlement agreement, the Trustee moved to substitute for Prasad as the plaintiff on all pending claims in the district court. (Adv. Dkt. No. 41.) The district court granted the motion and substituted the Trustee as the plaintiff for all claims for monetary

relief, but permitted Prasad to remain in the case as a plaintiff to pursue non-monetary relief, including reinstatement. (Adv. Dkt. No. 50.)

On June 12, 2013, the district court granted Acxiom summary judgment on all claims other than Prasad's breach of contract claim, in which Prasad alleged Acxiom breached its contract with her when it failed to pay her approximately $27,000 in commissions allegedly owed Prasad under her compensation plan. (Adv. Dkt. No. 117, 14.) On July 21, 2013, the district court denied Prasad's motion for reconsideration of the court's decision granting Acxiom's motion for summary judgment on Prasad's Title VII claims. (Adv. Dkt. No. 121.)

After the district court's ruling, the Trustee and Acxiom again engaged in settlement discussions and reached an agreement to resolve the breach of contract claim. On June 17, 2013, the Trustee filed a motion asking the Bankruptcy Court to approve that settlement agreement. (Bankr. Dkt. No. 80.) Under the agreement, Acxiom would pay a total of $20,000 to the Trustee: $17,500 to settle the Estate's breach of contract claim and $2,500 to settle the Trustee's claim for attorney's fees. Prasad would receive $1,200 from the total amount as compensation for her personal property exemption to the settlement. (Bankr. Dkt. No. 80.) Prasad objected to the settlement. (Bankr. Dkt. No. 89.) On August 6, 2013, the Bankruptcy Court held a hearing on the Trustee's motion to approve the settlement (Bankr. Dkt. No. 103) and entered an order approving the settlement the same day (Bankr. Dkt. No. 96).

On October 17, 2013, pursuant to the parties' stipulation, the district court dismissed with prejudice the remaining contract claim in the district court case. (Adv. Dkt. No. 131.)

Prasad now appeals the Bankruptcy Court's ruling, arguing that the Bankruptcy Court abused its discretion by approving the settlement between the Trustee and Acxiom. (Dkt. No. 1.)

LEGAL STANDARD

The key question in approving a bankruptcy settlement is whether the compromise is in the best interests of the bankruptcy estate. *Doctors Hospital*, 474 F.3d at 426. "The linchpin of the 'best interests of the estate' test is a comparison of the value of the settlement with the probable costs and benefits of litigating." *Id.* (citing *In re Energy Coop.,* 886 F.2d 921, 927–29 (7th Cir.1989)). Among the factors a court should consider are the litigation's probability of success, complexity, expense, inconvenience, and delay, "including the possibility that disapproving the settlement will cause wasting of assets." *Id.* (quoting *In re Am. Reserve,* 841 F.2d 159, 161 (7th Cir.1987)). "As part of this test, the value of the settlement must be reasonably equivalent to the value of the claims surrendered. This reasonable equivalence standard is met if the settlement falls within the reasonable range of possible litigation outcomes." *Id.* In conducting such an analysis, "a precise determination of likely outcomes is not required, since 'an exact judicial determination of the values in issue would defeat the purpose of compromising the claim.'" *In re Telesphere Communications, Inc.,* 179 B.R. 544, 553 (Bankr.N.D.Ill.1994) (quoting *In re Energy Coop.,* 886 F.2d at 927). Accordingly, "only if a settlement falls below the low end of possible litigation outcomes will it fail the reasonable equivalence standard." *Doctors Hospital*, 474 F.3d at 426 (citing *In re Energy Co-op., Inc.*, 886 F.2d 921, 929 (7th Cir.1989)).

A bankruptcy court's decision to approve a settlement is reviewed deferentially for abuse of discretion. *Depoister* v. *Mary M. Holloway Foundation*, 36 F.3d 582, 586-87 (7th Cir. 1994). "If the decision demonstrates a command of the case, we will not engage in second-guessing; the bankruptcy court is in a better position to 'consider the equities and reasonableness of a particular compromise.'" *Doctors Hospital,* 474 F.3d at 426 (quoting *In re Am. Reserve,* 841 F.2d at 162).

ANALYSIS

Prasad raises a number of issues on appeal, all of which boil down to her contention that the Bankruptcy Court abused its discretion by approving a settlement that Prasad asserts was not in the best interests of the Estate. Prasad argues (i) the settlement fell below the low end of possible litigation outcomes, (ii) the settlement was premature based on the disposition of her pending claims against Acxiom, and (iii) the settlement improperly released non-monetary claims that do not belong to the Estate. Prasad also contends in her reply brief that the Bankruptcy Court erred in finding that she did not have standing to object to the settlement between the Trustee and Acxiom.

I. Standing

Bankruptcy standing is narrower than Article III standing. *In re Cult Awareness Network, Inc.*, 151 F.3d 605 (7th Cir. 1998) (internal citations omitted). To have standing to object to a bankruptcy order, a person must be "directly and adversely affected pecuniarily" by the outcome of the bankruptcy proceedings. *In re Andreuccetti*, 975 F.2d 413, 416 (7th Cit. 1992). Chapter 7 debtors, unlike creditors, "rarely have such a pecuniary interest because no matter how the estate's assets are disbursed by the trustee, no assets will revert to the debtor." *In re Cult Awareness Network, Inc.*, 151 F.3d at 608 (citing *In re Schultz Mfg. Fabricating Co.*, 956 F.2d 686, 692 (7th Cir. 1992)).

There is, however, an exception to the general rule that debtors do not have standing to object to bankruptcy orders. On occasion, the assets of the estate may be sufficient to satisfy the debts of the estate; in that case, any surplus assets are remanded to the debtor. This situation often arises where a particular asset, such as a lawsuit, is difficult to value at the time of the bankruptcy proceedings. If the debtor can show a "reasonable possibility" of a surplus after satisfying all the

estate's debts, the debtor has a pecuniary interest and thus has standing to object to a bankruptcy order. *See Cult Awareness Network, Inc.*, 151 F.3d at 608; *Andreuccetti*, 975 F.2d at 417.

Prasad argues that she has standing because she has shown a reasonable possibility that her claims against Acxiom will produce a surplus for the Estate. But the Bankruptcy Court found that Prasad had not "shown that this is a surplus estate on which [she] would have standing" to object to the settlement. (Dkt. No. 4, 31.) This court finds no clear error with the Bankruptcy Court's finding. Prasad's debts far outweigh her assets. To realize a surplus, Prasad (or the Estate) would first require the Seventh Circuit to reverse the district court's grant of summary judgment on five of her six claims against Acxiom. Even if Prasad were to win a reversal on that point, she would still need to return to the district court, win a trial on all six of her claims, and win a judgment in excess of $500,000. (Dkt. No. 4, 31.) The litigation could take years and there is no guarantee—in fact, it is unlikely—that Prasad will prevail and be awarded such a large judgment. On these facts, the Bankruptcy Court did not abuse its discretion in finding that Prasad's claims against Acxiom do not provide the "reasonable possibility of a surplus" necessary to confer standing to a Chapter 7 debtor. *See Cult Awareness Network, Inc.*, 151 F.3d at 608-09 (holding possibility of a surplus predicated on a significant trial victory was "too remote to support standing").

II.  Best Interests of the Estate

Despite finding that Prasad lacked the requisite standing, the Bankruptcy Court considered the merits of her objections to the settlement. Because the court cannot be sure that the Bankruptcy Court found conclusively that Prasad lacked standing, the court reviews the Bankruptcy Court's findings on the merits of Prasad's objections as well.

First, Prasad argues that the settlement is far too low in light her Title VII claims on appeal. Although the district court granted summary judgment for Acxiom on all the Title VII claims, Prasad contends that she is likely to succeed on appeal given the "mountain of direct evidence [she has] against Acxiom." (Dkt. No. 7, 4.) If successful, Prasad anticipates that she will recover more than $1 million from Acxiom before accounting for statutory attorney's fees, costs, and punitive damages. (*Id.*) Notwithstanding the Title VII claims, Prasad argues that the settlement also falls below the lowest possible recovery for her single breach of contract claim, because the district court might award "a period of years of income, plus commissions." (Dkt. No. 4, 4.) Finally, Prasad argues that the settlement is inadequate because it does not provide for attorney's fees, which her attorney might have recovered had he successfully prosecuted the contract claim to judgment in the district court case. (*Id.* at 4-5.)

The Bankruptcy Court did not err in finding that the settlement was within the reasonable range of possible litigation outcomes. In light of the summary judgment order, the Bankruptcy Court found that continued litigation of the Title VII claims would cause delay, expense, and would waste the Estate's assets with very little probability of success. (Dkt. No. 4, 33.) This court agrees. On her Amended Schedule B, Prasad valued all of her claims, including the Title VII claims, at $80,000. To argue now, after a loss on summary judgment, that recovery in excess of $500,000 is "highly likely" because of a "mountain of direct evidence" is simply not reasonable. Prasad's argument that the remaining breach of contract claim will yield a recovery far in excess of the settlement is similarly incredible. Prasad's contract claim, by her own estimation, is for approximately $27,000 in unpaid sales commissions allegedly owed to Prasad. The damages would not include "a period of years of income." Accordingly, the Bankruptcy Court properly

concluded that the settlement of $20,000 was reasonably equivalent to the value of the surrendered contract claim.

The Bankruptcy Court similarly did not err when it determined that the settlement need not award a fee to Prasad's attorney in the district court case. The monetary claims belonged to the Estate—not Prasad—and the Estate chose not to retain Prasad's attorney Chris Cooper ("Cooper"). The Bankruptcy Court concluded that Cooper was a volunteer; to the extent that he continued to work for the Estate post-petition, he took the risk that he would not be compensated. (Dkt. No. 4, 35.) Consequently, Prasad's argument that Arkansas law (i) applies to the contract claim and (ii) provides for a fee award is irrelevant because Cooper was not the Estate's lawyer.

Prasad's next argument relates to the timing of the settlement. According to Prasad, the Bankruptcy Court should not have approved the settlement because the district court had not yet entered a final and dispositive ruling on the breach of contract claim. (Dkt. No. 4, 3-4; Dkt. No. 7, 5.) As the Bankruptcy Court explained, the fact that a case has not been fully litigated is not a basis to reject an otherwise reasonable settlement. The purpose of settlement is to reduce risk and save money by compromising before getting to the end. (Dkt. No. 4, 34.) Prasad's assertion that the Bankruptcy Court should have delayed its ruling until after a trial on the merits would entirely undercut the purpose of settlement and waste the resources of the litigants and the court. Accordingly, the Bankruptcy Court did not err when it approved a reasonable settlement in advance of final adjudication in the district court.[2]

---

[2] As an alternative to waiting for trial, Prasad argues that the Bankruptcy Court should have conducted an evidentiary hearing to test the merits of her claim. As the Bankruptcy Court noted, Rule 9019 does not obligate the court to hold an evidentiary hearing. *Depoister*, 363 F.3d at 586. Here, there was no need to do so because the district court fully and fairly considered the merits of Prasad's claims on summary judgment.

Prasad further contends that the settlement was premature and overbroad because it improperly released her right to seek non-monetary relief for her Title VII claims on appeal. (Dkt. No. 4, 3.) As a preliminary matter, the Bankruptcy Court did not approve a settlement releasing Prasad's non-monetary claims because those claims did not belong to the Estate. (Dkt. No. 4, 35-37.) The Bankruptcy Court correctly observed that it did not have the authority to do so. (*Id.*); s*ee Matthews* v. *Potter*, 316 F. App'x 518, 524 (holding claims for injunctive relief are of no value to the bankruptcy estate and thus of "no consequence to the trustee or the creditors"). Notwithstanding Prasad's assertion to the contrary, the settlement agreement simply does not preclude Prasad from pursuing her claims for non-monetary relief. Pursuant to the parties' settlement agreement, the district court dismissed with prejudice only the contract claim that had not been resolved on summary judgment. (Adv. Dkt. No. 131.) Consequently, Prasad is free to pursue non-monetary relief for her Title VII claims on appeal.

Prasad's remaining arguments do not merit extended discussion. First, with regard to the argument that the settlement did not provide for Prasad's exemption rights, Prasad argues for the first time in her reply brief that she is entitled to personal bodily injury exemption of $15,000 on account of Irritable Bowel Syndrome and Colitis caused by Acxiom. (Dkt. No. 7, 5.) Prasad failed to raise this argument in the Bankruptcy Court and thus waived it on appeal. Second, Prasad argues that the Bankruptcy Court "really stretched to find any case law applicable to grant a settlement to the Trustee." (Dkt. No. 4, 2.) Prasad provides no support for this argument in her briefs; instead, she merely recites her various claims against Acxiom. Moreover, because the Bankruptcy Court correctly applied the *Doctors Health* framework, the court rejects this argument. Third, Prasad contends that her claims against Acxiom should not be considered pre-petition legal claims and thus do not belong to the Estate. (Dkt. No. 7, ¶ 7.) The court rejects

this argument because (i) Prasad failed to raise this argument in the Bankruptcy Court and (ii) Prasad raised the same argument, unsuccessfully, in the district court case. (*See* Adv. Dkt. No. 50, 3-4 (holding Prasad's monetary claims against Acxiom belong to the Estate).) Fourth, Prasad contends that the Trustee is not entitled to $1.1 million from her Estate because only $102,326 in creditor claims have been filed to date. In October 2009, the Bankruptcy Court issued an order discharging Prasad's debts, which totaled $1,250,179.67. (Bankr. Dkt. No. 19.) Prasad cannot challenge that determination, now more than four years later, in an appeal concerning the settlement of her Title VII case.

## CONCLUSION

The decision of the Bankruptcy Court to grant the Trustee's motion to approve the settlement (Bankr. Dkt. No. 96) is affirmed. Civil Case Terminated.

ENTER:

*[signature: James F. Holderman]*

JAMES F. HOLDERMAN
District Judge, United States District Court

Date: November 18, 2013